IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JORGE L HERNANDEZ,

    Plaintiff,

    v.

AMGEN MANUFACTURING LIMITED,

    Defendant.

**Civil No. 13-1357 (SEC)**

**OPINION AND ORDER**

Before the Court are the defendant's motion to dismiss for lack of subject-matter jurisdiction (Docket # 5), the plaintiff's opposition thereto (Docket # 8), and the defendant's reply. Docket # 11. After reviewing the filings and the applicable law, the defendant's motion is **GRANTED**.

**Factual and Procedural Background**

Jorge L. Hernández (Plaintiff) filed this putative diversity suit against his former employer, Amgen Manufacturing Limited (AML), claiming unjustified dismissal and retaliation under Puerto Rico Laws 80 and 115, P.R. Laws Ann. tit. 29, §§ 185a-m, 194a. Defendant AML is a subsidiary of Amgen, Inc. (Amgen), an American multinational biopharmaceutical company headquartered in Thousand Oaks, California. Before his termination, Plaintiff, a Puerto Rico citizen, worked as a "Quality Inspector" in AML's Juncos, Puerto Rico manufacturing plant. Docket # 1, ¶ 9. Invoking the court's diversity jurisdiction, see 28 U.S.C. § 1332, Plaintiff sues AML — but not Amgen — alleging that AML is a corporation created under the laws of Bermuda with its "headquarters" in California. Docket # 1, ¶ 4. He claims damages in excess of $75,000. Id., p. 12.

AML moves to dismiss for want of subject-matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), arguing that because its principal place of business is in Juncos, Puerto Rico, it is considered a Puerto Rico citizen for § 1332 purposes. And because Plaintiff is also a Puerto

**Civil No. 13-1357 (SEC)**                                                                                                         Page 2

Rico citizen, the defendant maintains, diversity of citizenship is lacking. Docket # 5. Plaintiff opposed. Docket # 8.

### Standard of Review

Fed. R. Civ. P. 12(b)(1) is the appropriate vessel for challenging a court's subject-matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). In reviewing a motion to dismiss under this rule, the court construes the plaintiffs' allegations liberally and "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011) (internal quotation marks and citations omitted). Accordingly, courts are empowered to "[w]eigh the evidence and make factual determinations, if necessary, to determine whether it has jurisdiction to hear the case." Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 40 n. 8 (1st Cir. 2012) (citing Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 163 (1st Cir. 2007)). When faced with a jurisdictional challenge courts must credit the plaintiffs' well-pleaded factual averments and indulge every reasonable inference in the pleader's favor. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing Valentin, 254 F.3d at 363). Nonetheless, it is beyond dispute that a plaintiff faced with a subject-matter jurisdiction challenge has the burden to demonstrate its existence. Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citations omitted).

### Applicable Law and Analysis

*Diversity of citizenship*

It goes without saying that "federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but, rather, must appraise their own authority to hear and determine particular cases." Calderón-Serra v. Wilmington Trust Co., 715 F.3d 14, 17 (1st Cir. 2013) (quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998)). As relevant here, diversity jurisdiction requires that the "parties be citizens of different states and that the amount in controversy exceed $75,000 . . . ." McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 212 (1st Cir. 2012) (citing 28 U.S.C. §§ 1332(a)).

**Civil No. 13-1357 (SEC)**                                                                 Page 3

The defendant does not dispute that Hernández is a Puerto Rico citizen, nor that the statutory jurisdictional amount, see 28 U.S.C. § 1332(a), is satisfied. Rather, the controversy boils down to whether or not AML is a Puerto Rico citizen for purposes of diversity jurisdiction; if the defendant were a Puerto Rico citizen, of course, there would be no diversity of citizenship. See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) ("[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action.").

Congress has crafted the statutory framework for federal diversity jurisdiction, providing that a corporation is a citizen of every state in which it is incorporated and in the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1); e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 564 F.3d 75, 78 (1st Cir. 2009). But a corporation's presence in the state of a plaintiff's residence, without more, is insufficient to defeat diversity jurisdiction. See Wierman v. Casey's Gen'l Stores, 638 F.3d 984, 1004 (8th Cir. 2011). While a corporation is "not deemed a citizen of every State in which it conducts business or is otherwise amenable to personal jurisdiction," Wachovia Bank v. Schmidt, 546 U.S. 303, 318 (2006), it "can have only one principal place of business." Diaz-Rodríguez v. Pep Boys Corp., 410 F.3d 56, 59 (1st Cir. 2005) (citation omitted).

The critical issue in this case is the location of AML's principal place of business. "In determining a corporation's principal place of business," the First Circuit has said, "a district court's inquiry must focus *solely* on the business activities of the corporation whose principal place of business is at issue . . . ." Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 61 (1st Cir. 1993); accord, e.g., Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 351 (3d Cir. 2013). There is, however, "an exception to this general rule" — to wit, "where there is evidence that the separate corporate identities of a parent and subsidiary have been ignored." Taber Partners, 987 F.2d at 61. Put another way, "where there is no evidence that the integrity of the corporate form has been violated, the separate corporate identities of a parent and subsidiary

**Civil No. 13-1357 (SEC)** Page 4

should be honored when determining either one's principal place of business." Id. (collecting First Circuit case law on this point).

Here, all agree that AML is incorporated in Bermuda, so it is a "citizen" of Bermuda. Now, in order for AML to also be a California citizen (as alleged in the complaint and required for diversity jurisdiction), AML's "actual center of direction, control, and coordination," i.e., its "nerve center," Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010), must be located in California. No one disputes that Hertz, the landmark 2010 case in which the Supreme Court held that "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities" (often "metaphorically," id., called its nerve center), controls this aspect of the matter. Hertz also teaches that "in practice . . . [the nerve center] should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination," and "not simply an office where the corporation holds its board meetings." Id. at 93; see Funai Elec. Co., Ltd. v. Daewoo Electronics Corp., 616 F.3d 1357, 1380 (Fed. Cir. 2010). The Court follows this eminently correct approach here. See Harris v. Rand, 682 F.3d 846, 851 (9th Cir. 2012) (noting that Hertz "provided a uniform test for courts to apply when determining the principal place of business for federal diversity jurisdiction purposes"); accord Santiago v. Baxter Healthcare S.A., No. 12-2029, 2013 WL 1352595, at *1 (D.P.R. Apr. 3, 2013).

To support its assertion that the parties are not fully diverse, AML furnishes a copy of Amgen and AML's Articles of Incorporation. Docket # 11-1, pp. 7-23. It also comes forward with affidavits from two AML directors, one of whom (AML's Executive Director of Human Resources) is a high-level executive. They attest, among many other things, that while AML is a corporation organized under the laws of Bermuda, Docket # 5-1, ¶ 3, AML's "principal offices" are in Juncos, Puerto Rico; that is where "its operations and activities are carried out . . . ." Id. ¶ 5; Docket # 11-1, p. 3 ¶ 16. It is in Juncos, according to the affiants, where AML's officers, including its "Vice President Site Operations, Vice President Manufacturing, Vice

**Civil No. 13-1357 (SEC)**                                                                 Page 5

President Quality, Executive Director Finance, Executive Director Engineering, Executive Director Supply Chain, and Executive Director Human Resources are located . . . ." Docket # 5-1. AML's Chairman, President, and General Manager's sole office is located there, and that is where he leads AML's operations. Docket # 11-1, p. 3 ¶ 18.

On the other hand, a footnote in the motion to dismiss sheds light on a critical and evident datum: Plaintiff "seems to be confusing AML with Amgen, Inc., its parent Company, which is located in Thousand Oaks, California." Docket # 5, p. 3 n. 2. AML, goes the clarification, "is in Puerto Rico, the only place where it has business activities." Id. So for diversity-jurisdiction purposes, it reasons, "AML is a citizen both of its place of incorporation, Bermuda, and the place where its principal place of business is located, Juncos, Puerto Rico." Docket # 5, p. 3.  And because Plaintiff is also a citizen of Puerto Rico, there is no diversity jurisdiction, depriving the Court of subject-matter jurisdiction. Id.  AML's reasoning is entirely sound.

Plaintiff, however, resists this reasonable conclusion. Attempting to overcome the force of AML's syllogism, but ignoring the subsidiary/parent relationship between AML and Amgen, Plaintiff himself marshals an affidavit. Because of his "personal experience" at AML, Plaintiff says, "most of the important decisions regarding the defendant's operations were not taken in Juncos, Puerto Rico but in Thousand Oaks, California." Docket # 8-1, ¶ 3. For instance, he maintains that whenever "there was an important problem with the quality of the products manufactured in Juncos[,] the final decision as to what was to be done was taken by people . . . assigned to Defendant's offices in Thousand Oaks[,] California." Id. ¶ 4. He similarly says that "the Defendant's Chief Executive Office[r] . . . works on Thousand Oaks[,] California and not in Juncos, Puerto Rico." Id. ¶ 12. In short, he submits that AML's place of business is in California, not Juncos, Puerto Rico. See Docket # 8, p. 3.

The main problem with Plaintiff's opposition is that it makes no effort whatsoever to address AML's sensible explication regarding the confusion created by his choice of litigation strategy — namely, ignoring (or failing to concede) the self-evident fact that defendant AML

**Civil No. 13-1357 (SEC)**                                                                 Page 6

and Amgen (AML's parent company) are two different entities. See Docket # 11-1, p. 3 ¶ 13. In doing so, Hernández ignores the bedrock principle elucidated above: A parent corporation maintains separate citizenship from its subsidiary, at least for purposes of diversity of citizenship. See, e.g., Topp v. CompAir Inc., 814 F.2d 830, 835 (1st Cir. 1987). As the First Circuit has repeatedly made plain:

> [t]he mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary. There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary.

Negrón-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007) (quoting Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir.1980)); see also U.S.I. Properties Corp. v. M.D. Const. Co., Inc., 860 F.2d 1, 7 (1st Cir. 1988).[1] "If this were not so," Judge Campbell wrote for the First Circuit over two decades ago, "every independently incorporated, wholly owned subsidiary which is part of a large conglomerate would be treated (for diversity jurisdiction purposes) as a mere division of a large company rather than a separate corporation." Topp, 814 F.2d at 835. This principle applies with equal force here.

Failing to recognize this antecedent question — and concede the obvious point — that AML is not Amgen, it is no surprise that Plaintiff makes no developed argument in this context. For instance, one could argue that the corporate veil between AML and Amgen, whose principal place of business is in California, "has been disregarded by the companies." Del Rosario-Ortega v. Star-Kist Caribe, Inc., 130 F. Supp. 2d 277, 281 (D.P.R. 2001). But Plaintiff does not. Nor could he, not least because of his litigation strategy and double burden of having to offer "clear evidence that the parent in fact controls the activities of the subsidiary." Escude Cruz, 619 F.2d at 905 (emphasis added); see Media Duplication Serv., Ltd. v. HDG Software, Inc., 928 F.2d

---

[1] See also, e.g., Torres Vazquez v. Commercial Union Ins. Co., 417 F. Supp. 2d 227, 235 (D.P.R. 2006) ("[T]he general rule is that those subsidiaries which are incorporated as separate entities from parent corporations must be considered as having their own principal place of business."); Escude Cruz, 619 F.2d at 905 ("Jurisdiction over the parent therefore becomes unfair to the extent that the independence of the local subsidiary is a reality.") (citation and internal quotation marks omitted).

**Civil No. 13-1357 (SEC)**                                                                 Page 7

1228, 1235 (1st Cir.1991) ("Once jurisdictional allegations are challenged, the party asserting diversity has the burden of establishing those allegations with competent proof.").[2] The upshot is that the Court disregards (as it must, see, e.g., Topp, 814 F.2d at 835) Amgen's parent status from the determination of AML's principal place of business, and therefore rejects Plaintiff's misguided approach of obfuscating AML with Amgen. No more is needed to conclude that Plaintiff falls short of shouldering his burden of establishing — with "competent proof," Hertz, 559 U.S. at 96-97, and by a "preponderance of the evidence," Roca-Barnett v. Caribbean Int'l News Corp., 920 F. Supp. 2d 238, 240 (D.P.R. 2013) — that AML's principal place of business is California.

While the foregoing determination ends the matter, it follows quite naturally that AML's nerve center is in Juncos, Puerto Rico — and thus that is where its principal place of business is located. The record makes manifest that AML's "officers direct, control, and coordinate the corporation's activities," Hertz, 559 U.S. at 80-81; see, e.g., Lugo-Vina v. Pueblo International, Inc., 574 F.2d 41, 43 (1st Cir. 1978), from Juncos, Puerto Rico. It reflects that AML is a manufacturing facility physically located in Juncos, Docket # 11-1, p. 3 ¶¶ 14-16; that its manufacturing activities take place in Puerto Rico, id.; its corporate offices are located in Puerto Rico, and its official mailing address is a Puerto Rico address, id. at ¶¶ 14-18; and AML employs almost 2,000 employees, the vast majority of whom are located and perform their duties at the site in Puerto Rico. Id. ¶ 15. And contrary to Plaintiff's intimations, see Docket #8, p. 6, AML neither owns nor controls any manufacturing plants, sites, laboratories, or distribution centers in locations other than in Puerto Rico, Docket # 11-1, p. 3 ¶ 16, and in fact,

---

[2] Hernández's limited perception regarding the way Amgen and AML functioned is undercut by the fact that he did not make or participate in, nor was he privy to, any decisions made by AML management regarding the direction of the daily operations of AML, nor did he have insight into those decisions or how they were made." Docket # 11-1, p. 2 ¶ 8. Accordingly, none of the allegations made in his affidavit constitutes "clear evidence" for purposes of destroying the presumption that a parent's subsidiary is a separate entity for purposes of diversity jurisdiction. See Escude Cruz, 619 F.2d at 905. And because Hernández lacks the requisite "personal knowledge of the matter," Fed. R. Ev. 602, his testimony is disregarded.

**Civil No. 13-1357 (SEC)**                                                                                              Page 8

the vast majority of AML's corporate officers maintain their offices in Juncos, Puerto Rico. One could go on citing evidence, but that would overstate the point, thereby contravening one of Hertz's guiding considerations: Establishing a simple and clear-cut jurisdictional rule that eschews resource-intensive litigation for "administrative simplicity." Hertz, 559 U.S. at 94 (disavowing "'the sort of vague boundary that is to be avoided in the area of subject-matter jurisdiction wherever possible'" (quoting Sisson v. Ruby, 497 U.S. 358, 375 (1990) (Scalia, J., concurring in judgment)); cf. Topp, 814 F.2d at 837 ("[W]e can discern no value in having the federal district courts get mired down in the hopeless and unnecessary task of deciphering the internal power struggles going on between a parent corporation and its subsidiaries.").

In sum, because AML's nerve center is in Puerto Rico, its principal place of business is located in the Commonwealth. And because Plaintiff, who is a Puerto Rico citizen, offers no persuasive reason to question AML's representation that it is a citizen of Bermuda and Puerto Rico, the parties are not of diverse citizenship. The Court is therefore deprived of subject-matter jurisdiction.[3]

*Jurisdictional discovery*

As a fallback, Hernández requests that he be allowed to conduct jurisdictional discovery. Docket # 8, p. 7. This request is without merit. As a threshold matter, Plaintiff's one-sentence invocation of Valentín v. Hospital Bella Vista, 254 F.3d 358, 363-4 (1st Cir. 2001), a case which is not even on point, is insufficient to escape waiver. See, e.g., CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1525-6 (1st Cir.1996) (three sentences with three undiscussed citations did not defeat waiver). And his three-sentence discussion only reinforces

---

[3]To be sure, the Court does not reach this holding based only on the complaint's patently insufficient allegations regarding AML's place of business; Hertz does not mandate a "heightened" jurisdictional pleading standard. See Harris, 682 F.3d at 850 (establishing that a complaint that follows the general framework set forth in Form 7(a) in the Appendix of Forms to the Federal Rules of Civil Procedure is sufficient to satisfy Rule 8(a)(1)'s jurisdictional pleading requirement); but see Roca-Barnett, 920 F. Supp. 2d at 240 (dismissing after finding complaint's "allegations insufficient under the Supreme Court's 'principal place of business' standard enunciated in *Hertz*"). Rather, the Court considered the evidence submitted by Plaintiff: His own affidavit.

**Civil No. 13-1357 (SEC)**                                                                   Page 9

the conclusion that this request has been adverted to in a perfunctory manner, and is therefore deemed waived. See id.[4]

But even putting that flaw aside, the same conclusion would follow. Plaintiff's request for jurisdictional discovery fails on the merits as well. It is well settled in this circuit that "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Negrón-Torres, 478 F.3d 19, 27 (1st Cir. 2007) (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir.2001)). "In addition to making a colorable claim, it is also incumbent upon the plaintiff to 'present facts to the court which show why jurisdiction would be found if discovery were permitted.'" Id. (citation omitted).

"There is clearly a controversy," Plaintiff's one-sentence argument goes, "as to the scope of the Defendant's operations both in the Island and globally and the flimsy evidence attached to the Motion to Dismiss has not put this Honorable Court in a position to make a ruling that it has no jurisdiction to hear it." Docket # 8, p. 7. There are so many problems with this asseveration.

First, and as concluded above, the premise of this argument still (incorrectly) conflates AML and Amgen. Second, and accepting arguendo (and dubitante), that this line of inquiry is relevant, there is no controversy as to the "scope" of AML's operations; they are circumscribed to Puerto Rico. Third, contrary to Plaintiff's unpersuasive offering, the defendant has provided the court with ample and credible evidence to successfully contradict the allegation that AML has its place of business in California. Above all, and as correctly noted by the defendant, see Docket # 11, p. 10, Plaintiff fails to "present facts to the court which show why jurisdiction would be found if discovery were permitted." Crocker v. Hilton Int'l Barbados, Ltd., 976 F.2d

---

[4] See also, e.g., Silverstrand Investments v. AMAG Pharmaceuticals, Inc., 707 F.3d 95, 107 (1st Cir. 2013); Machado v. Shinseki, 700 F.3d 48, 49 (1st Cir. 2012) (per curiam); United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990).

**Civil No. 13-1357 (SEC)** Page 10

797, 801 (1st Cir.1992). Because Plaintiff cannot make a colorable claim for jurisdictional discovery, this request is **DENIED**.[5]

**Conclusion**

For the reasons stated, Plaintiff falls short of shouldering his burden of establishing diversity jurisdiction with competent proof. There being no other basis to exercise jurisdiction, the Court lacks subject-matter jurisdiction to entertain this action. Consequently, the defendant's motion to dismiss is **GRANTED**, and this case is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of October, 2013.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

[5] On this record, Plaintiff fails to show how any discovery would support the now-frivolous argument that AML's principal place of business is in California. See Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008).